IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| VANESSA HALDEMAN & BENJAMIN HALDEMAN, BY THEIR PARENTS *AS NEXT FRIENDS*; JOSEPH & DENISE HALDEMAN; JOSEPH HALDEMAN, individually; DENISE HALDEMAN, individually; JERRY HALDEMAN, individually; & CAROL HALDEMAN, individually, | ) ) ) ) ) ) ) ) ) ) ) | CV NO 05-00810 DAE-KSC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RUTH GOLDEN, in her individual capacity; PATRICIA NAVARRO, in her individual capacity; CAROLINE HAYASHI, in her individual capacity; CYNTHIA NOEL, in her individual capacity; UNIVERSITY OF NATIONS PRE-SCHOOL, a Private Agency; THE UNIVERSITY OF NATIONS as Respondeat Superior; ALEXANDER GRAVES, in his individual capacity; COUNTY OF HAWAI`I, a municipal entity; KAREN DUTY, in her individual capacity; DONALD CUPP, in his individual capacity; JILL ACERO, in her individual capacity; BOBBETTE STRAUSS, in her individual capacity; CHILD PROTECTIVE SERVICES, an agency of the Department of Human Services; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

DEPARTMENT OF HUMAN                )
SERVICES [DHS], State of Hawai`i;  )
LILLIAN KOLLER, DIRECTOR           )
OF DHS, in her official capacity;  )
ANDREA MCCOLLUM, in her            )
individual and professional capacity;  )
LEGAL AID SOCIETY OF               )
HAWAI`I, a Private Non-Profit      )
Agency; DAVID KAULIA, in his       )
individual capacity; COLLEEN       )
CLARK, in her individual and       )
professional capacity; CHILD AND   )
FAMILY SERVICE, a Private Non-     )
Profit Agency; JOINTLY AND         )
SEVERALLY,                         )
                                   )
            Defendants.            )
_____    )

ORDER GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANTS BOBBETTE STRAUSS AND THE INSTITUTE FOR FAMILY
ENRICHMENT'S MOTION FOR SUMMARY JUDGMENT;
AND ORDER DENYING COUNTY OF HAWAI`I AND
ALEXANDER GRAVES'S LIMITED JOINDER

On April 14, 2008, the Court heard Defendants Bobbette Strauss and

the Institute for Family Enrichment's Motion for Summary Judgment (Doc.

# 776).  William Deeley, Esq., and John Winnicki, Esq., appeared at the hearing on

behalf of Plaintiffs Vanessa Haldeman, Benjamin Haldeman,[1] Joseph Haldeman,

_____

[1] Vanessa and Benjamin Haldeman will be referred to individually as
"Vanessa" and "Benjamin," and collectively as either "Minor Plaintiffs," the
"Haldeman children," or the "children."

2

Denise Haldeman, Jerry Haldeman, and Carol Haldeman;[2] William Nagle, Esq., appeared at the hearing on behalf of Defendants Bobbette Strauss and the Institute for Family Enrichment (collectively, "IFE Defendants"); E. Mason Martin, III, Esq., appeared at the hearing on behalf of Defendants University of Nations Pre-School, University of the Nations, Ruth Golden, Patricia Navarro, Caroline Hayashi, and Cynthia Noel; Joseph K. Kamelamela, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant Alexander Graves and the County of Hawai`i; Julie A. Passa, Deputy Attorney General, appeared at the hearing on behalf of Defendant Donald Cupp; John R. Molay, Deputy Attorney General, appeared at the hearing on behalf of Defendant Karen Duty; John P. Gillmor, Michael S. Vincent, and Ryan S. Endo, Deputy Attorneys General, appeared at the hearing on behalf of Defendant Jill Acero; and April Luria, Esq., appeared at the hearing on behalf of Defendants Child and Family Service and Colleen Clark. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART AS MOOT IFE Defendants' Motion

---

[2] Joseph, Denise, Jerry, and Carol Haldeman will be referred to collectively as "Adult Plaintiffs." Joseph and Denise Haldeman, who are the parents of Benjamin and Vanessa, will be referred to as "Mr. Haldeman" and "Mrs. Haldeman," respectively and, collectively, as the "Haldeman parents." Jerry and Carol Haldeman, the children's paternal grandparents, will be referred to individually as "Jerry" and "Carol" and, collectively, as the "Haldeman grandparents."

for Summary Judgment and DENIES County of Hawai`i and Alexander Graves's Limited Joinder.

<u>BACKGROUND</u>

The parties are familiar with the facts of this case so the Court only recites those that are relevant to its determination here.  In July 2001, the Haldemans enrolled their daughter, then four-year-old Vanessa, in Defendants' University of the Nations Pre-School ("U.N. School" or "preschool").  In late summer and early fall of 2002, Vanessa began acting out and engaging in sex play with other children at the U.N. School.  Vanessa also told her teacher that her father had made her suck his private parts.

On or about October 23, 2002, U.N. School informed Defendant Child and Protective Services ("CPS") about Vanessa's sexualized behavior and statement alleging abuse.  That same day, Defendant Karen Duty, a supervisor with the West Hawai`i Assessment Unit in the Child Welfare Services Branch of the Social Services Division of the State of Hawai`i Department of Human Services ("DHS"), and Defendant Alexander Graves, a Hawai`i Police Detective, went to the preschool to investigate the reported abuse of Vanessa.  On October 28, 2002, CPS filed a petition for temporary foster custody of Vanessa and her then eight-year-old brother Benjamin in the Family Court of the Third Circuit of the State of

4

Hawai`i ("Family Court").  The Family Court approved the petition and granted DHS temporary foster custody (the "TFC Order") of the children.

The children were initially placed in the foster custody of Elaine Coates.  In December 2002, after complaints from Benjamin, Defendant Jill Acero (nka Forbes), a DHS Case Manager, moved the children to the residence of foster parents David and Cindy Kaulia.

On September 6, 2002, the Institute for Family Enrichment ("IFE") contracted with the Child and Adolescent Mental Health Division ("CAMHD") of the State of Hawai`i Department of Health ("DOH") to provide intensive mental health services to children in need of emergency/intensive support.  In March 2003, CAMHD assigned IFE to provide such services to Benjamin.  IFE, in turn, assigned Benjamin's case to Defendant Bobbette Strauss.  Strauss was employed with IFE as an intensive in-home therapist.  At the time, Benjamin's behavior was described by school authorities as oppositional, defiant, and physically aggressive towards other children.  CAMHD had also received reports that Benjamin engaged in similar behavior at his foster home, particularly towards Vanessa.

From April 1, 2003 to July 24, 2003, Strauss provided intensive therapeutic services to Benjamin at the Kaulia home several times per week. Strauss observed the interaction of the Haldeman children and the Kaulias and also

conducted interviews with Benjamin on an ongoing basis.  Strauss did not provide services to Vanessa.

On April 23, 2003, at the request of Defendant Acero, Strauss wrote a letter outlining her observations of Benjamin.[3]  In this letter, Strauss recommended the continuation of Benjamin's placement with the Kaulias.  Strauss did not make any recommendations regarding visitation between Benjamin and his mother, Mrs. Haldeman.

During May and June of 2003, Mrs. Haldeman had weekly supervised visitation with Benjamin and Vanessa at the YMCA.  At one of these visitation sessions, Benjamin told Mrs. Haldeman that he had been asked by Strauss whether he would like to be adopted.  At the next session, Benjamin showed Mrs. Haldeman photographs of himself, which led Mrs. Haldeman to conclude that Benjamin was being put up for adoption by Strauss.  Neither Mr. nor Mrs. Haldeman saw any documents concerning an adoption of Benjamin.  Shortly thereafter, the Haldeman grandparents applied for guardianship of the children.[4]

---

[3] This letter was requested by Acero because of conflicting recommendations between Strauss and Defendant Colleen Clark, the Haldeman children's Sex Abuse Treatment therapist, who had recommended that Benjamin be placed in another foster home.

[4] The Haldeman grandparents were awarded custody of the children in October 2003.

Due to progress by Benjamin in school and at the foster home, Strauss reduced the number of visits to the Kaulia home in July 2003.  On July 31, 2003, Strauss's assignment to Benjamin concluded.  Strauss did not attend any meetings pertaining to the criminal prosecution of Mr. Haldeman for alleged child abuse of Vanessa, nor did she testify in either the criminal case or in the Family Court proceeding.

On August 11, 2003, at the request of Cindy Kaulia, Strauss accompanied Vanessa to the grand jury.  Strauss also visited the children on the day they left Hawai`i in September 2003.  At the request of Deputy Prosecutor Dale Ross, Strauss met with Vanessa and Benjamin on May 17, 2004, which was the first day of the criminal trial of Mr. Haldeman.  That meeting was the last contact between Strauss and the Haldeman children.

On December 28, 2005, Plaintiffs filed a Complaint (Doc. # 1) against Defendants, which was amended on August 31, 2006 (Doc. # 140) and again on February 16, 2007 (Doc. # 374) ("Amended Complaint").  The Amended Complaint alleges constitutional violations pursuant to 42 U.S.C. § 1983 and various state law tort claims, discussed further below.  On January 30, 2008, IFE Defendants filed the instant Motion for Summary Judgment ("MSJ").  Plaintiffs

7

filed their opposition on March 27, 2008, and IFE Defendants replied on April 3, 2008.

On January 31, 2008, Defendants/Cross-Claim Defendants County of Hawai`i and Alexander Graves ("County Defendants") substantively joined (Doc. # 788) IFE Defendants' sixth and seventh arguments in support of their MSJ as described in more detail below. On February 1, 2008, Defendants Child and Family Service ("CFS") and Colleen Clark (collectively, "CFS Defendants") substantively joined (Doc. # 793) the instant motion on the same grounds.

In addition, on February 4, 2008, IFE Defendants filed a substantive joinder (Doc. # 794) to CFS Defendants' Motion for Summary Judgment. Accordingly, the Court will address any arguments from CFS Defendants' motion that are pertinent to IFE Defendants in the instant Order.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Porter v. Cal. Dep't of Corrections</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). A

main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

Initially, the Court notes that Plaintiffs bring a total of ten causes of action in their Amended Complaint.  Based on its careful review of the record, the Court finds that the following claims are brought against IFE Defendants: (1) Count 2 – conspiracy to violate civil rights under 42 U.S.C. § 1983;[5] (2) Count 4 – ordinary or common law negligence; (3) Count 5 – gross negligence; (4) Count 6 – defamation per se; (5) Count 7 – intentional infliction of emotional distress ("IIED"); and (6) Count 10 – invasion of privacy.[6]

The crux of Plaintiffs' allegations against IFE Defendants[7] is that Strauss manipulated the Haldeman children with coercive interrogations and continued to write reports to DHS supporting the suspension of visitation access by

---

[5] It appears that Plaintiffs' conspiracy claim for deprivation of civil rights is more appropriately brought pursuant to 42 U.S.C. § 1985.  Regardless, because § 1983 and § 1985 actions are both brought for alleged violations of civil rights as provided by federal law, the Court's analysis is not impacted.

[6] Count 1, which is for violation of civil rights under 42 U.S.C. § 1983, does not mention IFE Defendants. The remaining causes of action are inapplicable to IFE Defendants based on the nature of the claims asserted: Count 3 – "Monnell" liability against County Defendants pursuant to 42 U.S.C. § 1983; Count 8 – social worker malpractice; and Count 9 – attorney malpractice against Defendant Andrea McCollum.

[7] While the Court uses this term to refer to Strauss and IFE collectively, it appears that IFE's potential liability is premised exclusively upon Strauss's interactions with the Haldeman family.  There is nothing in the record establishing contact between other IFE personnel and the Haldemans.

Mrs. Haldeman.  Furthermore, Plaintiffs allege that Strauss, along with DHS, filed an erroneous report on the allegations of abuse, which also detailed her assessment of the Haldeman children, on or around April 25, 2003.  Plaintiffs also claim that while the Haldeman children were in the Kaulias' foster care, they were physically, emotionally, and sexually abused.  While this abuse was occurring, Plaintiffs apparently allege, IFE Defendants conspired with the Hawai`i County Prosecutor's Office to develop fabricated and fraudulent criminal charges against Mr. Haldeman.

In support of their MSJ, IFE Defendants claim that: (1) Plaintiffs cannot demonstrate that Strauss or IFE acted under color of state law for purposes of their § 1983 claim; (2) Plaintiffs cannot demonstrate that Strauss or IFE conspired with the Hawai`i County Prosecutors Office to develop fabricated and fraudulent criminal charges against Mr. Haldeman; (3) Plaintiffs cannot demonstrate that Strauss and/or IFE conspired with any other person to damage Plaintiffs' familial relationships; (4) Adult Plaintiffs' claims are barred by the applicable statute of limitations; (5) Strauss and IFE owed no legal duty of care to Vanessa, Denise, Joseph, Jerry, and Carol Haldeman (i.e. all Haldemans except Benjamin) and, thus, Plaintiffs' state law claims must be dismissed as to those Plaintiffs; (6) all claims asserted by or on behalf of Carol Haldeman must be

dismissed for her failure to appear for her court-ordered deposition; and (7) all Plaintiffs except Jerry Haldeman lack standing to sue for special damages.

Plaintiffs claim that IFE Defendants' arguments for summary judgment are without merit because: (1) IFE Defendants acted as agents of the State and under color of state law; (2) there is ample evidence of conspiracy, which creates a genuine issue of material fact; (3) the running of the statute of limitations was equitably tolled; (4) under the controlling case law, IFE Defendants owed a legal duty to all Plaintiffs; (5) Carol Haldeman was unable to testify due to a health condition, but her claims are not subject to dismissal; and (6) all Plaintiffs suffered the special damages sought to be recovered.

I.  Statute of Limitations

IFE Defendants argue that the Court should apply the law of the case doctrine and find that Adult Plaintiffs'[8] federal and state claims are barred by the statute of limitations.  Plaintiffs respond that application of the law of the case doctrine would result in manifest injustice and, regardless, the running of the statute of limitations on Plaintiffs' claims was equitably tolled.  For the reasons set forth below, the Court finds that the statute of limitations bars Adult Plaintiffs'

---

[8] IFE Defendants' limitations argument is limited to those claims brought by Adult Plaintiffs because claims of minors do not being to run until the minor reaches the age of eighteen.  See HRS § 657-13.

federal and state law claims because their cause of action accrued by October 2003, more than two years before the filing of the Plaintiffs' suit in December 2005.  As such, the Court declines to address whether application of the law of the case doctrine is appropriate here.[9]

"Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims." Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000).  Hawaii's personal injury statute provides that, "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  HRS § 657-7. HRS § 657-7 is also the relevant statute of limitations for Plaintiffs' state law tort claims.

---

[9] IFE Defendants' request for application of the law of case doctrine implicates the Court's December 12, 2006 and February 13, 2007 orders (Docs. # 289 & 370), in which the Court found that Hawai`i Revised Statutes ("HRS") § 657-7 barred Adult Plaintiffs' § 1983 and state law claims against Defendants Duty and Cupp ("Duty/Cupp Defendants").
    The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."  Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990).  Under the doctrine, a court is "generally precluded from reconsidering an issue previously decided by the same court[.]" United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000).  For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in the previous disposition."  Id. (internal quotation and citation omitted).  Application of the doctrine is discretionary.  Id.

For purposes of claims brought under § 1983, this Court must look to federal law to see "when a claim accrues" to determine when the statute of limitations period begins to run. Johnson, 207 F.3d at 653. Under federal law, a claim accrues when the plaintiff knows or should have known of the injury. See, e.g., Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002). The Hawai`i Supreme Court employs a similar standard, holding that a tort claim accrues when the plaintiff discovers, or through use of reasonable diligence should have discovered, the negligent act, the damage, and the causal connection between the two. Yamaguchi v. Queen's Med. Ctr., 648 P.2d 689, 693-94 (Haw. 1982). Plaintiffs filed their initial Complaint on December 28, 2005. Thus, the acts upon which Plaintiffs rely for their causes of action should have occurred on or after December 28, 2003 to fall within the limitations period.

The Court's careful review of the record leads it to the conclusion that Plaintiffs' claims against IFE Defendants accrued for purposes of both their federal and state claims, at the latest by October 2003. Strauss provided intensive therapy to Benjamin from April 1, 2003 to July 24, 2003. (Depo. of Bobbette Strauss ("Strauss Depo."), Ex. D at 93, 101, 109, attached to IFE Defs.' MSJ.) During this time period, the Haldemans were billed by IFE on a monthly or bi-monthly basis,

15

with the bills indicating the dates of Strauss's services.  (Depo. of Denise

Haldeman ("Mrs. Haldeman Depo."), Ex. G at 54-55, 63, attached to IFE Defs.'

MSJ.)  Plaintiffs allege that, during this time period, Strauss attempted to instill in

Benjamin the idea that his father sexually abused Vanessa and physically abused

him and his mother.  (Depo. of Benjamin Haldeman ("Benjamin Depo."), Ex. A at

97-98, attached to Pls.' Mot. in Opp'n.)  Plaintiffs also specifically allege that on

April 11 and 23, 2003, Strauss inaccurately reported that: (1) Benjamin was happy

at the Kaulia home  (The Institute for Family Enrichment: Progress Note, Ex. C,

attached to Pls.' Mot. in Opp'n); (2) Benjamin had an agreement with David

Kaulia that Benjamin would not use profanity if David would not smoke (Ex. B,

attached to Pls.' Mot. in Opp'n); and (3) Benjamin was relaxed, smiling, and

articulate while in the Kaulia's home. (Id.)  Furthermore, Mrs. Haldeman testified

that Benjamin reported that a person named "Bobbi" had asked him if he wanted to

be adopted during one of Mrs. Haldeman's visitations in May or June of 2003,

which raised concerns with Mrs. Haldeman.  (Mrs. Haldeman Depo. at 88-90).

Mrs. Haldeman also testified that she was first informed of Strauss's alleged

statements to Benjamin regarding Mr. Haldeman's purported molestation of

Vanessa shortly after the children were transferred to foster care with the

Haldeman grandparents in October 2003.  (Id. at 70-71.)  Finally, Jerry testified

that he and Mr. and Mrs. Haldeman discussed a potential civil suit against those

who they believed were conspiring against them when Jerry Haldeman was visiting

Hawai`i in 2003.[10]  (Depo. of Gerald Haldeman ("Jerry Depo."), Ex. H at 271,

attached to IFE Defs.' MSJ.)

Following the conclusion of her professional services to Benjamin,

Strauss had contact with the Haldeman children on two occasions.  First, on

August 11, 2003, Strauss accompanied Vanessa to the grand jury hearing.  (Strauss

Depo. at 145-46.)  Second, on May 17, 2004, Strauss met with the children on the

first day of Mr. Haldeman's criminal trial in order to make the children feel more

comfortable at the courthouse.  (Id. at 117.)  With the exception of this last act, all

of the events described above occurred more than two years prior to the December

28, 2005 filing of the Haldemans' law suit.

These facts establish that Plaintiffs had knowledge of Strauss's

allegedly improper actions, at the latest, by October 2003.  In fact, Mrs. Haldeman

was suspicious that Strauss was improperly attempting to put Benjamin up for

adoption as early as May or June 2003.  These facts further establish that Plaintiffs

---

[10] While it is unclear from the record on what date this visit occurred, it had
to have been before October 2003 as that is when custody of the Haldeman
children was granted to the Haldeman grandparents.  Jerry would not have been
visiting the children in Hawai`i had he already been awarded foster custody in his
home state of Washington.

were aware of their potential claims by October 2003, as evidenced by the conversation between Jerry and the Haldeman parents about a possible lawsuit. The only act that occurred within the limitations period – the May 17, 2004 visit between Strauss and the children – does not alter this determination because Plaintiffs' claims had already accrued.[11]

Plaintiffs assert that the statute of limitations was tolled for their claims against IFE Defendants because they were not in a position, financially and emotionally, to pursue this action while the criminal and Family Court matters were ongoing.  In previous orders involving this case, the Court found this argument to be without merit and finds so again here.

"The running of the statute of limitations can be equitably tolled for a complaint filed after its expiration where a plaintiff demonstrates '(1) that he [petitioner] has been pursuing his rights diligently, and (2) that some extraordinary

---

[11] Although Plaintiffs do not argue as such here, the only conceivable way this event could have affected the limitations period is via the continuing violation theory.  A continuing violation theory occurs for claims that "are based on the cumulative effect of individual acts."  Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  Plaintiffs do not argue that their claims are a result of the cumulative effect of Strauss's actions such that they were unaware that there was a violation until May 14, 2004.  Instead, Plaintiffs not only were aware of their potential law suit, but had gone so far as to discuss it in October 2003.  Accordingly, the continuing violation theory is inapplicable here.

circumstance stood in his way.'" Felter v. Norton, 412 F. Supp. 2d 118, 126 (D.

D.C., 2006) (quoting Pace v. DiGuglielmo, 544 U.S. 408 (2005)).  Extraordinary

circumstances are circumstances beyond the control of the complainant which

make it impossible to file a complaint within the statute of limitations, United

States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000), including government

conduct that "lulled" a complainant into inaction, Curtiss v. Mt. Pleasant Corr.

Facility, 338 F.3d 851, 855 (8th Cir. 2003), and falsities that mislead a petitioner.

Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001).

Even construing the Family Court and criminal proceedings as

"extraordinary circumstances," Plaintiffs have offered no evidence to suggest they

were diligently pursuing their rights here.  In fact, as a result of the various court

actions arising out of the removal of the children, Plaintiffs had retained counsel by

2003.  (See Mrs. Haldeman Depo at 63:4-16.)  Nevertheless, Plaintiffs failed to

bring suit until late December of 2005.  Plaintiffs provide no explanation for this

extended delay and, accordingly, Plaintiffs' equitable tolling argument fails.

Because their causes of action accrued by October 2003, more than

two years before the initiation of the instant suit, Adult Plaintiffs' § 1983

conspiracy claims and state law claims are barred by the statute of limitations.  As

such, the Court GRANTS IFE Defendants' MSJ on all claims with respect to Adult

Plaintiffs.

II. Substantive Merits of Conspiracy Claims

Regardless of whether the statute of limitations bars Adult Plaintiffs'

claims, IFE Defendants contend that they were not acting under color of state law

for purposes of Plaintiffs' § 1983 claims and, thus, the claims are unsustainable.

Furthermore, IFE Defendants aver that Plaintiffs' claim that IFE Defendants

conspired with others to develop fabricated and false evidence against Mr.

Haldeman lacks any basis in evidence.  Plaintiffs respond that IFE Defendants

were acting as agents of the State and, therefore, under color of law.  Additionally,

Plaintiffs argue that, because IFE Defendants were state agents and Plaintiffs have

adduced evidence of conspiracy among other state actors, it is a permissible

inference for the fact finder to conclude that IFE Defendants were part of the

conspiracy.  The Court agrees.

Here, there is insufficient evidence to support Plaintiffs' conspiracy

claim and, as such, summary judgment is appropriate.  As a result, the Court

declines to discuss whether IFE Defendants were acting under color of state law

for purposes of Plaintiffs' § 1983 claim.

> A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.

Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999) (citations omitted).  To prove a conspiracy, plaintiffs must show an agreement or meeting of the minds to violate constitutional rights.  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation and citation omitted).

> The essence of Plaintiffs' conspiracy claim is that Strauss
>
> attempted to indoctrinate Benjamin Haldeman during her weekly therapy sessions with him by repeatedly telling him that his father had abused his sister, which was not true, that his father physically abused him by using excessive force in disciplining him, which also was not true, and that his father physically abused his mother, which likewise was not true.  Furthermore, Strauss falsely represented in her reports that Benjamin Haldeman was happy in Kaulias' foster care.

(Pls.' Mot. in Opp'n at 3.)  Notwithstanding the fact that this allegation does not reference any agreement between IFE Defendants and the other Defendants, the Court construes this as a charge that IFE Defendants conspired with Hawai`i

County and/or State officials to impermissibly affect the criminal case against Mr.

Haldeman.

　　　　　The Court's careful review of the record reveals that not only was

there no such agreement between IFE Defendants and County Defendants, but

there was practically no contact between Strauss and County Defendants prior to

Strauss accompanying Vanessa to the grand jury proceedings in August 2003.

Strauss testified that she never met with Hawai`i County law enforcement

personnel for any purpose.  (Strauss Depo. at 135.)  Strauss did not testify in the

Family Court proceeding, at the grand jury, or at Mr. Haldeman's criminal trial.

(Id. at 103.)  Moreover, Strauss provided no documents to the County for purposes

of the criminal prosecution.  (Depo. of Dale Ross ("Ross Depo."), Ex. C at 136,

attached to IFE Defs.' MSJ.)  Plaintiffs have provided no evidence contradicting

Strauss's lack of interaction with the County.  Regardless of whether Strauss did in

fact try to "indoctrinate" Benjamin, this alone, without some evidence suggesting a

conspiratorial agreement, falls below the standard required for a conspiracy.

　　　　　Furthermore, Plaintiffs assert that, because IFE Defendants were the

State's agents and because Plaintiffs have "adduced evidence of conspiracy among

the other state actors . . ., it is a permissible inference for the fact finder to conclude

that their agents were part of the conspiracy."  Such broad statements are

22

insufficient to survive summary judgment.  As detailed above, IFE Defendants

carried their initial burden of proof by adducing evidence that there was no

conspiracy.  Plaintiffs therefore have the burden of setting forth contrary facts

demonstrating that there remains a genuine issue of fact on this issue.  Blind

reliance on arguments from other motions for purposes of creating a "permissible

inference" falls well below the summary judgment standard.  In short, Plaintiffs

have not provided any facts to support their conspiracy claim and, as such,

summary judgment for IFE Defendants is appropriate.

The Court therefore GRANTS IFE Defendants' MSJ with respect to

Plaintiffs' § 1983 conspiracy claims.  This ruling applies to all Plaintiffs, including

Minor Plaintiffs, and applies as an additional reason for dismissal of Adult

Plaintiffs' § 1983 claims.  Accordingly, all Plaintiffs' federal claims against IFE

Defendants are hereby dismissed.

III.  <u>State Law Claims</u>

As stated in footnote four above, IFE Defendants substantively joined CFS Defendants' motion for summary judgment.  In that motion, CFS Defendants made numerous arguments regarding their immunity from the instant claims.  The Court discusses these arguments in detail in its Order Granting CFS Defendants' Motion for Summary Judgment.  For purposes of the instant motion, the Court determines that IFE Defendants have immunity from the remaining Plaintiffs' state law claims[12] pursuant to HRS § 350-3(b) because Strauss was functioning within the scope of her job responsibilities during her treatment of Benjamin.  As a result, the Court does not address CFS Defendants' additional immunity arguments as they relate to IFE Defendants here.

HRS § 350-3(b) provides that "[a]ny individual who assumes a duty or responsibility pursuant to section 350-2 or chapter 587 shall have immunity from civil liability for acts or omissions performed within the scope of the individual's duty or responsibility."  Chapter 587 establishes a comprehensive plan for the protection of children who have been abused or neglected by investigating

_____

[12] As discussed in Section I above, the Court previously found Adult Plaintiffs' state law claims to be barred by the statute of limitations.  The instant immunity argument therefore functions as an alternative ground to the dismissal of Adult Plaintiffs' state law claims and as a separate ground for the dismissal of Minor Plaintiffs' state law claims.

24

complaints of abuse, removing children from their parents' custody, placing

children in foster care, and initiating further action in the Family Court when

warranted.  See HRS § 587-21.

HAR § 17-920.1-15(d) provides: "[w]here the department determines

that multidisciplinary resources are needed, and the resources are available, the

resources may be utilized to assist the department with assessment of the child and

appropriate family members by referral to multidisciplinary consultant or

diagnostic teams, psychiatric and psychological consultants, mental health clinics,

and similar resources."  HAR § 17-920.1-2 defines consultant, diagnostic, or

multidisciplinary teams as those persons who provide consultation through a

formal arrangement with DHS to assist social workers with planning for families.

Finally, HAR § 17-920.1-7(c) allows DHS to provide for assessment, diagnostic,

or treatment services through a purchase of services contract.

As stated in this Court's Order Granting in Part and Denying in Part

Defendant Forbes' (fka Acero) Motion to Dismiss, employment cases regarding

respondeat superior liability for an employer where an employee acting within the

scope of employment commits a tort are helpful to this analysis.[13]  To determine

---

[13] This Court is cognizant of the fact that the scope of employment cases and Restatement of Agency approach this issue from the standpoint of liability of the employer, rather than through a lens of qualified immunity for the individual

whether a tort was committed within the scope of an employee's employment

under Hawai`i law, Hawai`i courts follow the Restatement of Agency § 228, which

provides that:

> (1) Conduct of a servant is within the scope of
> employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and
> space limits; [and]
> (c) it is actuated, at least in part, by a purpose to serve the
> master[.] . . .
> (2) Conduct of a servant is not within the scope of
> employment if it is different in kind from that authorized,
> far beyond the authorized time or space limits, or too
> little actuated by a purpose to serve the master.

Wong-Leong v. Hawaiian Indep. Refinery, Inc., 879 P.2d 538, 543 (Haw. 1994).

"In determining the scope of employment, the applicable test is whether the

employee's conduct was related to the employment enterprise or if the enterprise

derived any benefit from the activity."  Id. at 546.

 The Restatement of Agency section 229 provides that "[t]o be within

the scope of the employment, conduct must be of the same general nature as that

authorized, or incidental to the conduct authorized."  Restatement of Agency 2d

_____

employee's acts.  However, this Court finds such cases to be instructive because
the Hawaii Revised Statute at issue clearly states that the scope of employment is
the pertinent question and does not follow the line of cases regarding qualified
immunity under 42 U.S.C. § 1983, as has been argued by Plaintiffs.

§ 229 (1958).  The comments provide that

> a servant is authorized to do anything which is
> reasonably regarded as incidental to the work specifically
> directed or which is usually done in connection with such
> work . . . [a]lthough an act is a means of accomplishing
> an authorized result, it may be done in so outrageous or
> whimsical a manner that it is not within the scope of
> employment.

Restatement § 229 Cmts. a and b.  Following the Restatement, the Hawai`i

Supreme Court has noted that an act, "although forbidden, or done in a forbidden

manner, may be within the scope of employment . . . the ultimate question is

whether or not it is just that the loss resulting from the servant's acts should be

considered as one of the normal risks to be borne by the business [.]"  State v.

Hoshijo ex rel. White, 76 P.3d 550, 563 n.29 (Haw. 2003) (finding that the actions

of a student manager of the state university basketball team in shouting racial slurs

at a spectator at a basketball game was conduct within scope of employment

because he was required to attend games, work on the bench, assist the team, it was

foreseeable that he would interact with the public at games, and the handbook

proscribed use of obscene or inappropriate language to spectators).

In their substantive joinder, IFE Defendants do not provide guidance

to this Court as to how the facts pertaining to Strauss's services to Benjamin relate

to a claim of immunity under § 350-3(b).  Nevertheless, in examining IFE

Defendants' MSJ and the attached exhibits, it appears that IFE Defendants

essentially claim that Strauss acted within the scope of her duties and did not make

any of the purportedly improper statements to Benjamin and Vanessa regarding the

accusations of abuse against Mr. Haldeman.  While similarly unclear, it appears

Plaintiffs argue that Strauss acted outside the scope of her duties by (1) attempting

to instill in Benjamin the idea that Mr. Haldeman had molested Vanessa and

physically abused Benjamin and Mrs. Haldeman; and (2) making false statements

in reports and letters to other people involved in the Haldeman custody

proceeding.[14]  For the reasons set forth below, the Court finds that, even if

Plaintiffs' allegations are true, Strauss's conduct was within the scope of her

employment because (1) it was of the same general nature as that which she would

normally perform, or, alternatively, (2) was incidental to the services she was

authorized to provide to Benjamin.

     As stated above, Plaintiffs allege that Strauss attempted to indoctrinate

Benjamin and filed false reports describing Benjamin as happy in the Kaulia home.

---

[14] As previously stated, Strauss is also alleged to have asked Benjamin if he would like to be adopted, which led Mrs. Haldeman to believe that Strauss was putting Benjamin up for adoption.  This accusation, however, is mentioned only in Plaintiffs' "Summary of Argument" section and is not discussed in the body of the opposing brief or concise statement of fact.  As such, the Court does not consider it for purposes of the immediate discussion

First, with regard to the alleged indoctrination, if Strauss did in fact discuss the allegations against Mr. Haldeman with Benjamin then these acts fell within the scope of her professional duties.  Strauss was assigned, pursuant to the Contract between IFE and DOH, to provide intensive therapeutic services to Benjamin, whose behavior had been described as oppositional, defiant, and physically aggressive.  In essence, Strauss was tasked with attempting to mollify Benjamin's problematic behavior.  The Court finds that determining the root of such behavior for the purposes of correcting it clearly falls within the professional responsibility of one providing intensive therapeutic services.  As a result, any purported conversations Strauss had with Benjamin regarding the allegations of abuse against Mr. Haldeman did not render Strauss's actions beyond the scope of her employment duties.

Second, the allegedly false reports by Strauss did not render her actions outside the scope of her employment duties.  There is no dispute between the parties that Strauss did in fact produce such reports.  Plaintiffs, however, place substantial weight on the contention that these reports were fraudulent and intended to harm the Haldemans because the reports contained false information about Benjamin's happiness at the Kaulias.  Whether Strauss's assessments of Benjamin's happiness were accurate is irrelevant to the instant determination.  The

29

Contract explicitly provides that IFE and, by extension, Strauss is required to

"[p]rovide . . . reports pertaining to services as required by the STATE." (Scope of

Services (Ex. A to the Contract), Ex. A at 2, attached to IFE Defs.' MSJ.)

Plaintiffs provided no evidence to suggest that Strauss was prohibited from filing

reports or that filing such reports somehow exceeded the scope of her job duties.

In essence, Plaintiffs' disagreement with the contents of these reports represents

nothing more than a divergence of opinion with Strauss's findings. This

disagreement alone is insufficient to render Strauss's reports outside the scope of

her job duties. As such, Strauss is entitled to immunity under HRS § 350-3(b).

Lastly, even if this Court had determined that there was a genuine

issue of fact as to whether Strauss's actions were outside the scope of her

professional responsibilities, Plaintiffs have not provided any evidence as to why

this issue is material to their claims. There is no indication that Strauss had

authority to determine whether the Haldeman children would stay in the Kaulias'

foster care. Rather, the Contract indicates that IFE was hired to provide a limited

scope of services to children who satisfied specific criteria, namely those who, like

Benjamin, had behavioral problems while in foster care. Plaintiffs have not

produced any evidence that Strauss's opinions regarding Benjamin's happiness at

the Kaulias had any bearing, material or otherwise, on whether the children remained in the Kaulias' care.

Based on the foregoing, the Court GRANTS summary judgment to IFE Defendants, by virtue of their substantive joinder in CFS Defendants' Motion for Summary Judgment, as to all of Plaintiffs' state law claims pursuant to HRS § 350-3(b).

IV. Defendants' Additional Arguments

A. IFE Defendants

In Section I, the Court granted IFE Defendants' MSJ as to Adult Plaintiffs' federal and state claims on statute of limitations grounds.  In Section II, the Court granted IFE Defendants' MSJ with respect to all Plaintiffs' federal claims, including Minor Plaintiffs, because there was no issue of fact as to the existence of a conspiracy.  In Section III, the Court found that summary judgment was again appropriate as to all Plaintiffs' state law claims based on statutory immunity as conferred by HRS § 350-3(b).  As a result, the Court determines that there are no active claims pending against IFE Defendants at this juncture and, accordingly, DENIES AS MOOT IFE Defendants' additional arguments in support of their MSJ.

B. <u>Joinders</u>

As stated previously, CFS Defendants and County Defendants substantively joined the instant MSJ with respect to IFE Defendants' arguments seeking dismissal of: (1) Carol Haldeman's claims as a result of her failure to appear at her court-ordered deposition,[15] and (2) claims by all Plaintiffs besides Jerry Haldeman related to special damages for legal fees, expert witness fees, and mental health practitioner fees.  In a separately filed order, this Court dismissed all of Plaintiffs' claims against CFS Defendants and, as such, declines to address IFE Defendants' additional arguments as joined by CFS Defendants.

In addition, this Court's previous orders have dismissed in part Plaintiffs' claims against County Defendants.  As such, some of Plaintiffs' claims against County Defendants are still active.  In their joinder, however, County

---

[15] IFE Defendants argue that, because Carol Haldeman failed to appear at her scheduled deposition, her claims should be dismissed with prejudice based on her failure or refusal to permit discovery pursuant to Federal Rule of Civil Procedure 37(b).  Plaintiffs answer that Carol Haldeman is incapable of giving a deposition because she is suffering from memory loss and Alzheimer's disease.  Additionally, Plaintiffs aver that there is ample evidence from discovery to support Carol Haldeman's claims.  As such, dismissal of Carol Haldeman's claims is an overly harsh remedy.

32

Defendants provide this Court with no argument identifying which of these remaining claims Carol Haldeman might have against the County. As this Court does not have enough information on which to make an informed ruling on this issue, the Court declines to address this argument as it relates to County Defendants.

As to the special damages issue, IFE Defendants claim that all Plaintiffs except Jerry Haldeman lack standing to sue for the special damages claimed in this matter for unpaid legal fees, expert witness fees, mental health practitioner fees, and others claimed by Plaintiffs. Essentially, IFE Defendants argue that, because discovery has revealed that only Jerry Haldeman incurred expenses for payment of the above services, the other Plaintiffs lack standing to sue for these expenses. Plaintiffs assert that the funds expended by Jerry Haldeman in connection with the present proceeding and other funds sought to be recovered by Plaintiffs came from Jerry and Carol Haldeman's joint account and those funds were part of the inheritance belonging exclusively to Mr. and Mrs. Haldeman and the children.

In support of this argument, IFE Defendants cite primarily to Jerry Haldeman's deposition, in which he testified that he volunteered to pay the legal

expenses for his son's criminal defense, as well as the legal and expert expenses for the Family Court litigation, and had no expectation that Mr. Haldeman or any of the other Plaintiffs would re-pay him.  (Jerry Depo. at 259.)  Plaintiffs cite to Jerry Haldeman's declaration, in which he states that all of the funds used to pay attorneys fees and costs and expenses of any kind associated with this action, the Family Court action, and the criminal proceeding came from the joint funds of Jerry and Carol Haldeman.  (Jerry Haldeman Declaration, Ex. G at 3, attached to Pls.' Mot. in Opp.)  Jerry Haldeman also stated that Mr. Haldeman and the Haldeman children are the sole heirs of he and his wife Carol and it is their intention to pass their estates to Mr. and Mrs. Haldeman and the children.

At the least, Jerry Haldeman's Declaration raises a genuine issue of material fact as to whether Carol Haldeman, and perhaps the other Plaintiffs, may properly seek special damages in this case.  Summary judgment is therefore inappropriate on this argument.

## CONCLUSION

For the reasons stated above, this Court GRANTS IN PART AND DENIES IN PART AS MOOT IFE Defendants' Motion for Summary Judgment and DENIES the County of Hawai`i and Alexander Graves's Limited Joinder.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, April 29, 2008.



_____
David Alan Ezra
United States District Judge

Vanessa Haldeman, et al. vs. Ruth Golden, et al., Civil No. 05-00810 DAE-KSC; ORDER GRANTING IN PART AND DENYING IN PART AS MOOT DEFENDANTS BOBBETTE STRAUSS AND THE INSTITUTE FOR FAMILY ENRICHMENT'S MOTION FOR SUMMARY JUDGMENT