IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI I

| | | |
|---|---|---|
| VANESSA HALDEMAN & | ) | CV NO 05-00810 DAE-KSC |
| BENJAMIN HALDEMAN, BY | ) | |
| THEIR PARENTS *AS NEXT* | ) | |
| *FRIENDS*; JOSEPH & DENISE | ) | |
| HALDEMAN; JOSEPH | ) | |
| HALDEMAN, individually; | ) | |
| DENISE HALDEMAN, | ) | |
| individually; JERRY HALDEMAN, | ) | |
| individually; & CAROL | ) | |
| HALDEMAN, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RUTH GOLDEN, in her individual | ) | |
| capacity; PATRICIA NAVARRO, in | ) | |
| her individual capacity; CAROLINE | ) | |
| HAYASHI, in her individual | ) | |
| capacity; CYNTHIA NOEL, in her | ) | |
| individual capacity; UNIVERSITY | ) | |
| OF NATIONS PRE-SCHOOL, a | ) | |
| Private Agency; THE UNIVERSITY | ) | |
| OF NATIONS as Respondeat | ) | |
| Superior; ALEXANDER GRAVES, | ) | |
| in his individual capacity; COUNTY | ) | |
| OF HAWAII, a municipal entity; | ) | |
| KAREN DUTY, in her individual | ) | |
| capacity; DONALD CUPP, in his | ) | |
| individual capacity; JILL ACERO, in | ) | |
| her individual capacity; BOBBETTE | ) | |
| STRAUSS, in her individual | ) | |
| capacity; CHILD PROTECTIVE | ) | |
| SERVICES, an agency of the | ) | |
| Department of Human Services; | ) | |

DEPARTMENT OF HUMAN          )
SERVICES [DHS], State of Hawaii;  )
LILLIAN KOLLER, DIRECTOR     )
OF DHS, in her official capacity;  )
ANDREA MCCOLLUM, in her      )
individual and professional capacity;  )
LEGAL AID SOCIETY OF         )
HAWAII, a Private Non-Profit  )
Agency; DAVID KAULIA, in his  )
individual capacity; COLLEEN  )
CLARK, in her individual and  )
professional capacity; CHILD AND  )
FAMILY SERVICE, a Private Non-  )
Profit Agency; JOINTLY AND   )
SEVERALLY,                   )
                             )
            Defendants.      )
_____  )

ORDER GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANTS CHILD AND FAMILY SERVICE AND COLLEEN CLARK'S
MOTION FOR SUMMARY JUDGMENT

On April 14, 2008, the Court heard Defendants Child and Family

Service and Colleen Clark's Motion for Summary Judgment (Doc. # 767).

William Deeley, Esq., and John Winnicki, Esq., appeared at the hearing on behalf

of Plaintiffs Vanessa Haldeman, Benjamin Haldeman,[1] Joseph Haldeman, Denise

_____

[1] Vanessa and Benjamin Haldeman will be referred to individually as
"Vanessa" and "Benjamin," and collectively as either "Minor Plaintiffs," the
"Haldeman children," or the "children."

Haldeman, Jerry Haldeman, and Carol Haldeman;[2] April Luria, Esq., appeared at the hearing on behalf of Defendants Child and Family Service ("CFS") and Colleen Clark (collectively, "CFS Defendants"); E. Mason Martin, III, Esq., appeared at the hearing on behalf of Defendants University of Nations Pre-School, University of the Nations, Ruth Golden, Patricia Navarro, Caroline Hayashi, and Cynthia Noel (collectively, "U.N. Defendants"); Joseph K. Kamelamela, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant Alexander Graves and the County of Hawai`i ("County Defendants"); Julie A. Passa, Deputy Attorney General, appeared at the hearing on behalf of Defendant Donald Cupp; John R. Molay, Deputy Attorney General, appeared at the hearing on behalf of Defendant Karen Duty; John P. Gillmor, Michael S. Vincent, and Ryan S. Endo, Deputy Attorneys General, appeared at the hearing on behalf of Defendant Jill Acero; and William J. Nagle, Esq., appeared at the hearing on behalf of Defendants Bobbette Strauss and the Institute for Family Enrichment ("IFE Defendants").

After reviewing the motion and the supporting and opposing memoranda, the Court

---

[2] Joseph, Denise, Jerry, and Carol Haldeman will be referred to collectively as "Adult Plaintiffs."  Joseph and Denise Haldeman will be referred to as "Mr. Haldeman" and "Mrs. Haldeman," respectively, and as the "Haldeman parents" collectively.

GRANTS IN PART AND DENIES IN PART AS MOOT CFS Defendants'

Motion for Summary Judgment.

<u>BACKGROUND</u>

The parties are familiar with the underlying facts of the case so the

Court only briefly recounts those that are relevant to its instant determination.  In

July 2001, Mr. and Mrs. Haldeman enrolled their daughter, then four-year-old

Vanessa, in Defendants' University of the Nations Pre-School ("U.N. School" or

"preschool").  In late summer and early fall of 2002, Vanessa began acting out and

engaging in sex play with other children at the U.N. School.  In late October 2002,

Vanessa told her teacher that her father had made her suck his private parts.

On or about October 23, 2002, the U.N. School informed Defendant

Child and Protective Services ("CPS") about Vanessa's sexualized behavior and

statement alleging abuse.  That same day, Defendant Karen Duty, a supervisor with

the West Hawai`i Assessment Unit in the Child Welfare Services Branch of the

Social Services Division of the State of Hawai`i Department of Human Services

("DHS"), and Defendant Alexander Graves, a Hawai`i Police Detective, went to

the preschool to investigate the reported abuse of Vanessa.  On October 28, 2002,

Defendant CPS filed a petition for temporary foster custody of Vanessa and her

brother Benjamin in the Family Court of the Third Circuit of the State of Hawai`i

("Family Court"). The Family Court approved the petition and granted DHS temporary foster custody (the "TFC Order") of the Haldeman children. The TFC Order also provided for visitation between Mrs. Haldeman and the children at the discretion of DHS and in consultation with the children's guardian ad litem and therapist.

On October 26, 2002, DHS filed a Safe Family Home Report and Family Service Plan, which provided, in part, for services to the Haldeman family through Defendant CFS.[3] On October 31, 2002, Defendant Donald Cupp, a CPS Case Manager, completed a Client Referral Form requesting CFS to provide sex abuse treatment services to the Haldeman children pursuant to the Intra-Family Sexual Abuse Treatment and Services Contract for West Hawai`i (the "Contract"). According to the Contract, CFS would provide services to families and individuals affected by intra-family sexual abuse, including initial and ongoing assessments of the safety of the child and progress of the family, social skills building, assertiveness skills building, communication skills building, prevention and safety planning, relapse prevention, educational individual and group sessions, case

---

[3] CFS, a private entity, essentially provides the type of services State agency CPS would if sufficient staffing existed within CPS.

management, monitoring and after care, and individual and group peer support and self-help.[4]

Defendant Colleen Clark, an employee of CFS, provided treatment to the Haldeman children until September 2003, when Clark moved to Canada. Clark's responsibilities as counselor involved providing assessment and clinical services to the children and communicating with DHS and the courts.  DHS required Clark's assessment so that the case manager working with the children had an accurate view of the children's progress, how the children were doing in counseling and foster care, and any long-term or immediate needs of the children. The goal of the CFS program was to reunite children with their parents.

Clark's last treatment session with Benjamin was September 11, 2003, and her last session with Vanessa was September 17, 2003.  Neither CFS nor Clark

---

[4] The Request for Proposal ("RFP") for the Contract sought proposals to provide statewide sexual abuse treatment and services to clients referred by DHS and explained DHS' need to contract with an outside provider as the result of heavy caseloads, decreasing resources, and insufficient staffing.

The RFP required the contractor to provide a therapist with a master's degree or higher in the behavioral or social sciences field, granted by an accredited institution of education, and experience in the areas of victimology, sex therapy, human sexuality, or sex offender treatment as demonstrated by documented training and supervised clinical experience.

The Court's careful review of the record indicates that Clark had a Master's Degree in Clinical Social Work from the University of Calgary and the requisite experience.

had any further contact with the Haldeman children after those dates.  On

September 19, 2003, Clark was deposed by Robert D.S. Kim, Esq., on behalf of the

Haldemans in the Family Court proceedings.

On December 28, 2005, Plaintiffs filed a Complaint (Doc. # 1) against

Defendants, which was amended on August 31, 2006 (Doc. # 140) and again on

February 16, 2007 (Doc. # 374) ("Amended Complaint").  The Amended

Complaint alleges constitutional violations pursuant to 42 U.S.C. § 1983 and

various State law tort claims, discussed further below.  On January 30, 2008, CFS

Defendants filed the instant Motion for Summary Judgment ("MSJ").  On February

4, 2008, IFE Defendants filed a substantive joinder with the instant motion (Doc. #

794).  County Defendants filed a statement of no opposition (Doc. # 800) to the

instant motion on February 5, 2008.  Plaintiffs filed their opposition on March 27,

2008 (Doc. # 849), and CFS Defendants replied on April 3, 2008 (Doc. # 878).  On

April 9, 2008, Plaintiffs filed a Supplemental Memorandum in Opposition to CFS

Defendants' MSJ ("Supplemental Opposition") (Doc. # 896) requesting a

continuance of the ruling on the MSJ pursuant to Local Rule 56(f) until Plaintiffs

complete the deposition of Clark.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

9

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Initially, the Court notes that Plaintiffs bring a total of ten causes of action in their Amended Complaint.  Based on its careful review of the record, this Court finds that the following seven claims are brought against CFS Defendants: (1) Count 2 – conspiracy to violate civil rights under 42 U.S.C. § 1983; (2) Count 4 – ordinary or common law negligence; (3) Count 5 – gross negligence; (4) Count 6 – defamation per se; (5) Count 7 – intentional infliction of emotional distress ("IIED"); (6) Count 8 – social worker malpractice; and (7) Count 10 – invasion of privacy.[5]

---

[5] It appears that Plaintiffs' conspiracy claim for deprivation of civil rights is more appropriately brought pursuant to 42 U.S.C. § 1985.  Regardless, because § 1983 and § 1985 actions are both brought for alleged violations of civil rights as provided by federal law, the Court's analysis is not impacted.

CFS Defendants move for summary judgment on Counts 1, 3, and 9 since these counts are not alleged against CFS Defendants.  The Court agrees. Count 1, which is for violation of civil rights under 42 U.S.C. § 1983, does not mention CFS Defendants and appears directed at other Defendants.  The other causes of action are inapplicable to CFS Defendants based on the nature of the claims asserted: Count 3 – "Monnell" liability against the County of Hawai`i pursuant to 42 U.S.C. § 1983; and Count 9 – Attorney Malpractice against Defendant Andrea McCollum.  Accordingly, the Court GRANTS CFS Defendants' MSJ with regard to Counts 1, 3, and 9 and hereby dismisses these claims.

With regard to the remaining causes of action, CFS Defendants argue that: (1) all State claims against them should be dismissed because Clark is entitled to qualified immunity pursuant to Hawai`i Revised Statutes ("HRS") § 350-3(a); (2) Clark is entitled to absolute immunity from all State claims by all Plaintiffs pursuant to HRS § 350-3(b); (3) CFS Defendants are entitled to quasi-judicial immunity from all State law claims based on the Family Court's order granting temporary foster custody; (4) CFS Defendants are entitled to qualified immunity for Plaintiffs' § 1983 claim since Clark and CFS were performing services statutorily required of the State and were therefore state actors; (5) as state actors, CFS Defendants are entitled to qualified immunity as to Plaintiffs' State law

11

claims; (6) CFS Defendants are entitled to absolute immunity from all claims arising out of Clark's testimony to the Family Court; (7) the statute of limitations bars Adult Plaintiffs' claims and, furthermore, CFS Defendants owed no duty to Plaintiffs; (8) there are no facts supporting Plaintiffs' § 1983 conspiracy claim; and (9) there is no evidence to justify a claim for punitive damages against CFS Defendants.

While unclear, it appears that Plaintiffs claim that: (1) CFS Defendants are not entitled to qualified or absolute immunity; (2) CFS Defendants owed a duty of care to Plaintiffs and breached that duty here; (3) the statute of limitations does not bar Plaintiffs' claims; (4) CFS Defendants engaged in a conspiracy to violate Plaintiffs' constitutional rights; and (5) punitive damages against CFS Defendants are appropriate.

For the reasons set forth below, this Court finds that summary judgment on behalf of CFS Defendants is warranted as to all claims made against them by all Plaintiffs.

I. <u>Statute of Limitations</u>

      The Court notes initially that it has previously found that Adult Plaintiffs'[6] § 1983 claims were barred by the statute of limitations where the allegedly wrongful activities forming the basis of Plaintiffs' claims occurred more than two years prior to the initiation of the instant suit.  (<u>See</u> Order Granting Defendant Karen Duty's Motion to Dismiss Adult Plaintiffs' § 1983 Claims and Granting Defendant Donald Cupp's Motion to Dismiss Adult Plaintiffs' § 1983 Claims ("December 2006 Order").)  Here, CFS Defendants claim that Adult Plaintiffs' § 1983 claims and State claims are similarly time barred because the same two-year statute applies and CFS Defendants' last contact with Plaintiffs occurred on September 19, 2003, when Clark was deposed by Mr. Kim.  As such, according to CFS Defendants, the last possible date Plaintiffs could have timely filed their complaint against CFS Defendants was September 19, 2005.  Plaintiffs respond that HRS § 657-18 tolled the statute of limitations from September of 2003 until the present because Clark departed from the State and was not amenable to service of process during that time.

---

      [6] CFS Defendants' statute of limitations argument is restricted to those claims brought by Adult Plaintiffs because claims of minors do not being to run until the minor reaches the age of eighteen.  <u>See</u> HRS § 657-13.

"Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims." Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000).   Hawaii's personal injury statute provides, "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  HRS § 657-7. To determine when a statute of limitations period begins to run, this Court must look to federal law to see "when a claim accrues."  Johnson, 207 F.3d at 653. Under federal law, a claim accrues when the plaintiff knows or should have known of the injury.  See, e.g., Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002).

HRS § 657-7 is also the relevant statute for purposes of Adult Plaintiffs' State law claims, all of which are personal injury claims.  Accordingly, Adult Plaintiffs' State law claims are subject to the same two-year limitations period.  Under Hawai`i law, a claim accrues when the plaintiff discovers, or through use of reasonable diligence should have discovered, the negligent act, the damage, and the causal connection between the two.  Yamaguchi v. Queen's Med. Ctr., 648 P.2d 689, 693-94 (Haw. 1982).  When a plaintiff's cause of action accrued on a particular date, the two-year anniversary of that date becomes the last

day within the statute of limitations and, therefore, a plaintiff must file a complaint by then.  See Bauernfiend v. AOAO Kihei Beach Condominiums, 54 P.3d 452, 455 (Haw. 2002).

It is undisputed that Clark's last contact with the Haldeman children was September 17, 2003, when Clark conducted her last treatment session with Vanessa.  (Depo. of Colleen Clark ("Clark Depo."), Ex. D at 299, attached to CFS Defendants' MSJ.)  It is also undisputed that Mr. Kim, the Haldeman's counsel at the time, deposed Clark on September 19, 2003.[7]  As such, Adult Plaintiffs should have known by that date at the latest whether they had a cause of action against CFS Defendants.  Moreover, because there was no contact between Clark and Plaintiffs after September 19, 2003 due to Clark's relocation, Adult Plaintiffs' claims could not have accrued after this date.  The Court finds that Adult Plaintiffs' claims against CFS Defendants accrued by September 19, 2003 at the latest, or more than two years and three months before the filing of the instant suit.  As a result, Adult Plaintiffs' § 1983 claims and State law claims are barred by the statute of limitations.

---

[7] While unclear from the record, it appears that Clark relocated to Canada shortly thereafter.

Plaintiffs argue that HRS § 657-18 tolled the limitations period during the time that Clark was out of the country (i.e. from September 2003 to the present).  Thus, Plaintiffs contend, their claims are not barred by the statute of limitations.  CFS Defendants argue that: (1) HRS § 657-18 does not toll the statute of limitations when the defendant is amenable to service of process, and (2) HRS § 657-18 provides for tolling only when the defendant is absent from the State at the time the cause of action accrues and is thus inapplicable here.

HRS § 657-18 reads:

> If at any time when any cause of action specified in this part or section 663-3 accrues against any person, the person is out of the State, the action may be commenced within the terms respectively limited, after the return of the person into the State, and if, after the cause of action has accrued, the person departs from and resides out of the State, the time of the person's absence shall not be deemed or taken as any part of the time limited for the commencement of the action.

This statute therefore provides two different tolling mechanisms for when a defendant is absent from the State.  First, the statute of limitations is tolled when a defendant is out of State when the claim accrues and then begins to run again once the defendant returns to the State.  Second, following the accrual of a cause of action, the limitations period is tolled for any period that the defendant is out of State.  Clearly, the first tolling mechanism is unavailable to Plaintiffs here because,

16

as set forth above, their cause of action accrued against CFS Defendants <u>before</u> Clark departed from the State.  The Court therefore directs its analysis solely at the second tolling mechanism of HRS § 657-18.

> While not apparent from the face of the statute, the Hawai`i Supreme Court has held that HRS § 657-18 does not toll the statute of limitations when the defendant is amenable to service of process.  <u>Eto v. Muranaka</u>, 57 P.3d 413 (Haw. 2002).  In so holding, the Court found the terms "absent" or "out of the state" to mean a defendant who is beyond personal jurisdiction and process of the court and not simply a defendant who is absent from the State.  <u>Id.</u> at 417.  This interpretation of absence is grounded in the "purposes of statutes of limitations . . . to encourage promptness in the prosecution of actions and on statutes establishing substituted service which provided the means for the equivalent of personal service . . . on absent defendants."  <u>Id.</u> at 418 (internal quotations and citations omitted).

> Plaintiffs have not provided any evidence suggesting that Clark was not amenable to service of process.  Instead, Plaintiffs cite to a single Hawai`i case, <u>Shin v. McLaughlin</u>, 967 P.2d 1059 (Haw. 1998), and then attempt to distinguish its facts from the instant matter.[8]  Notwithstanding Plaintiffs' efforts, the central

---

[8] Plaintiffs claim that the unique facts of <u>Shin</u> required the Hawai`i Supreme Court to interpret the tolling provision of § 657-18 in conjunction with Hawaii's long-arm statutes, HRS §§ 634-33 and 634-36, thus rendering its application

holding of <u>Shin</u> is identical to that of <u>Eto</u>: for purposes of tolling under HRS § 657-18, the terms "absent" or "out of state" refer to when a defendant is not amenable to service of process.  <u>Shin</u>, 967 P.2d at 1064.  Plaintiffs apparently claim that Clark is and always was a citizen and resident of Canada,[9] not of Hawai`i, and that this fact somehow nullifies application of the plain holdings of <u>Shin</u> and <u>Eto</u> here.  Plaintiffs are mistaken.  In order to invoke the tolling provisions of HRS § 657-18 here, Plaintiffs have the burden of establishing that Clark was not amenable to service of process.  Plaintiffs have provided no evidence suggesting as such.  Moreover, Plaintiffs neglect to mention a crucial fact with respect to their tolling argument: Clark was served on June 13, 2006.[10]  (Doc. # 48.)  It strains the bounds

---

inappropriate here.  Plaintiffs apparently contend that <u>Shin</u> is therefore inapposite to the instant matter because the State's long-arm statutes are inapplicable in a § 1983 action.  Because Rule 4(f) of the Federal Rules of Civil Procedure ("FRCP") provides for service of process on individuals in a foreign country, Plaintiffs' argument is unavailing.

[9] In support of this statement, Plaintiffs reference page 20 of Clark's January 26, 2007 deposition.  (<u>See</u> Pls.' Mot. in Opp'n at 38.)  The Court's careful review of page 20 indicates no such support for Plaintiffs' assertion.  As such, the Court does not consider this fact, notwithstanding its questionable relevance, for purposes of its determination here pursuant to Local Rule ("LR") 56.1(f).  ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").

[10] The Court also notes that CFS was served on March 29, 2006.  (Doc. # 19.)

of credulity to argue that a person was not amenable to service of process when that same person was in fact served.  As a result, Plaintiffs' claims against CFS Defendants were not tolled by HRS § 657-18 when Clark was clearly amenable to service of process during her absence from the State.[11]

Based on the preceding discussion, the Court hereby GRANTS CFS Defendants' MSJ with respect to Adult Plaintiffs' § 1983 claims and State claims because these claims accrued more than two years prior to the initiation of this law suit and the statute of limitations was not tolled by Clark's absence from the State.

II.  Substantive Merits of Conspiracy § 1983 Claim

CFS Defendants allege that there are no facts supporting an agreement among Defendants to fabricate false evidence in order to cause criminal charges to be filed against Mr. Haldeman or to cause harm to other Plaintiffs.  Accordingly, CFS Defendants aver, Plaintiffs' § 1983 conspiracy claim fails as to all Plaintiffs. The Court agrees.

> A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least

---

[11] This finding applies to Plaintiffs' federal and State claims because both utilize HRS § 657-7.

> share the common objective of the conspiracy.  A
> defendant's knowledge of and participation in a
> conspiracy may be inferred from circumstantial evidence
> and from evidence of the defendant's actions.

Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999) (citations

omitted).  To prove a conspiracy, plaintiffs must show an agreement or meeting of

the minds to violate constitutional rights.  Franklin v. Fox, 312 F.3d 423, 441 (9th

Cir. 2002) (internal quotation and citation omitted).

Plaintiffs' conspiracy claim against CFS Defendants is apparently

premised on the following allegations: (1) during the course of her treatment of the

children, Clark conspired with other Defendants to eliminate the Haldemans from

the lives of Vanessa and Benjamin and to make the children into convincing

witnesses against their parents; (2) during therapy with the children, Clark and CFS

wrote numerous letters to Defendant Jill Acero "designed to enhance Clark's aura

of scientific expertise and further the conspiracy to make the children into

convincing witnesses against their parents" (Pls.' Concise Statement of Facts

("CSOF") # 17); (3) Clark worked to further the conspiracy at a case conference on

December 12, 2002; (4) Clark utilized "numerous suggestive and manipulative

books and videos to coerce the children into being convincing witnesses against

their parents . . . " (Id. # 19); (5) Clark worked to further the conspiracy at a case

conference on April 1, 2003; (6) Robert Kim, Plaintiffs' previous counsel, and

Kristen Becker-Brown testified that the chief agenda of Clark and Defendant

McCollum was to "undercut the Haldeman family and coerce the children into

being convincing witnesses against their parents" (Id. # 22); and (7) Clark worked

to further the conspiracy at a civil/criminal coordination meeting on May 5, 2003.

While unclear, Plaintiffs apparently contend that the existence of a

conspiracy is automatically a jury question and rely on Mendocino Environmental

Ctr. v. Mendocino County, 192 F.3d 1283 (9th Cir. 1999) for this proposition.

Plaintiffs misstate the law.  "Whether defendants were involved in an unlawful

conspiracy is generally a factual issue and should be resolved by the jury, so long

as there is a possibility that the jury can infer from the circumstances that the

alleged conspirators had a meeting of the minds and thus reached a[n]

understanding to achieve the conspiracy's objectives."  Id. at 1302 (internal

quotations and citations omitted).  Thus, the existence of a conspiracy is not a

matter that is impervious to summary judgment, as Plaintiffs infer.  Rather, the

issue should reach the jury provided there is at least some evidence suggesting the

existence of a conspiracy.

Such evidence is not present here.  For example, Plaintiffs' primary

allegation – that Clark conspired with other Defendants to eliminate the Haldeman

21

parents from the lives of the children and to make the children into convincing witnesses against their parents – is supported by nothing more than Clark's progress notes concerning her sessions with the children.  (See Pls.' CSOF # 15.)

These notes say nothing of a conspiratorial agreement, nor do they imply the existence of one.[12]  The fact that Clark had cause to make notes during the course of her treatment of the Haldeman children proves nothing more than this treatment occurred.  Moreover, Plaintiffs provide no argument in the body of their motion in support of the theory that Clark's progress notes are evidence of a meeting of the minds between Clark and other Defendants.  Instead, Plaintiffs summarily state that "CFS Defendants participation in a conspiracy has been properly pled; it would be palpable error to grant summary judgment at this juncture."  (Pls.' Mot. in Opp'n at 41.)  Such unsupported arguments are insufficient to defend against a motion for summary judgment.

As another example, Plaintiffs claim on three occasions in their CSOF that Clark worked to further the conspiracy at various case conferences.  (See Pls.'

---

[12] The Court notes that Plaintiffs' CSOF fails to comply with LR 56.1(c), which states that documents referenced in the CSOF "shall not be filed in their entirety.  Instead, the filing party shall extract and highlight only the relevant portions of each referenced document."  Plaintiffs attach, as Exhibits K and L, over 100 pages of Clark's notes without any reference or guidance to the supposedly relevant portion of the notes.  Despite this, the Court's exhaustive review of Clark's notes reveals absolutely no evidence of a conspiracy.

CSOF Facts # 18, 20, and 23.)  As support of this "fact," Plaintiffs merely attach

copies of memoranda indicating that such case conferences occurred.  (Ex. O to

Pls.' CSOF.)  The Court's careful review of Exhibit O reveals no agreement or

meeting of the minds to achieve the conspiratorial objective Plaintiffs ascribe to

CFS Defendants.  Furthermore, the memoranda give no indication of what was

discussed at these conferences or even who attended the meetings.  In fact, the

memoranda merely provided notice to Clark and other attendees of when the

conferences would occur.  Therefore, there is no support for Plaintiffs' allegation

that Clark furthered the conspiracy at the case conferences.

Finally, Plaintiffs propose that the testimony of Mr. Kim and Kristen

Becker-Brown establishes that Clark and McCollum's agenda was to undercut the

Haldeman family and coerce the children into being convincing witnesses against

their parents.  (Pls.' CSOF # 22.)   As support, Plaintiffs cite to Mr. Kim's

deposition, during which he testified that he based his belief that there had been

coordination between Clark and McCollum on the "number of visits they had, the

off-the-record discussions that they had; basically, the close-knit relationship that

they had."  (Robert Kim Depo., Ex. R at 100, attached to Pls.' CSOF.)  However,

Kim also testified that he did not recall how many meetings occurred between

Clark and McCollum and did not have a firsthand knowledge of any discussions

between Clark and McCollum.  (Id. at 101, 105.)  Kim's testimony is opinion,

nothing more, and offers no evidence that a conspiracy existed between Clark,

McCollum, or any other Defendants.

The examples discussed above, of which there are more but which the

Court declines to discuss in the interest of brevity, are representative of the wholly

unsupported "facts" set forth by Plaintiffs in opposition to the instant motion.  As

such, there is no genuine issue of fact whether a conspiracy involving CFS

Defendants existed.  The Court therefore GRANTS CFS Defendants' MSJ with

respect to Plaintiffs' § 1983 claims as to all Plaintiffs, including Minor Plaintiffs.

III.  Immunity

A.  HRS § 350-3(a)

CFS Defendants argue that all State claims against them should be

dismissed because HRS § 350-3(a) grants them immunity for reports made in good

faith in connection with Clark's work with the Haldeman children.  HRS § 350-

3(a) states that:

> [a]nyone participating in good faith in the making of a
> report pursuant to this chapter shall have immunity from
> any liability, civil or criminal, that might be otherwise
> incurred or imposed by or as a result of the making of
> such report.  Any such participant shall have the same
> immunity with respect to participation in any judicial
> proceeding resulting from such report.

HRS § 350-1.1 mandates reporting of child abuse by, among others, employees at private and public schools and employees of public and private agencies providing social, medical, or mental health services.

While there are no Hawai`i cases interpreting HRS § 350-3, the Court finds that the plain language of HRS § 350-3(a) indicates that it is intended to apply to the initial reporting of sexual abuse and not to subsequent reports made by professionals associated with the investigation.  As such, the Court DENIES AS MOOT IFE Defendants' MSJ as to this issue.

B.  <u>HRS § 350-3(b)</u>

CFS Defendants assert that all Plaintiffs' State law claims are barred pursuant to the immunity provision of HRS § 350(b).  While Plaintiffs address immunity in broad terms, nowhere in their opposition do they specifically address the plain language of § 350(b).  For the reasons stated below, this Court finds that CFS Defendants are immune from Plaintiffs' State law claims pursuant to HRS § 350(b).

HRS § 350-3(b) provides that "[a]ny individual who assumes a duty or responsibility pursuant to section 350-2 or chapter 587 shall have immunity from civil liability for acts or omissions performed within the scope of the individual's duty or responsibility."  Chapter 587 establishes a comprehensive plan

25

for the protection of children who have been abused or neglected, by investigating complaints of abuse, removing children from their parents' custody, placing children in foster care, and initiating further action in the Family Court, when warranted.  See HRS § 587-21.  As recently discussed by the Hawai`i Supreme Court, Hawaii Administrative Rule ("HAR") § 17-920.1-1 states that DHS "shall provide protective services immediately to a child who is the subject of a report." See Kaho`ohanohano v. Dep't of Human Servs. State of Haw., 178 P.3d 538, ___ (Haw. 2008) (page cites are unavailable).

HAR § 17-920.1-15(d) provides: "[w]here the department determines that multidisciplinary resources are needed, and the resources are available, the resources may be utilized to assist the department with assessment of the child and appropriate family members by referral to multidisciplinary consultant or diagnostic teams, psychiatric and psychological consultants, mental health clinics, and similar resources."  HAR § 17-920.1-2 defines consultant, diagnostic, or multidisciplinary teams as those persons who provide consultation through a formal arrangement with DHS to assist social workers with planning for families. Finally, HAR § 17-920.1-7(c) allows DHS to provide for assessment, diagnostic, or treatment services through a purchase of services contract.

Based on the above, it is clear that Chapter 587 and its associated administrative regulations authorized DHS to enter into the Contract with CFS to provide sexual abuse treatment services on behalf of the State.  CFS assumed a duty pursuant to Chapter 587 by virtue of the Contract, thus implicating the immunity provision of HRS § 350-3(b).  The critical question for immunity purposes therefore is whether CFS Defendants, specifically Clark, were operating within the scope of their employment when they provided treatment to the Haldeman children.

As stated in this Court's Order Granting in Part and Denying in Part Defendant Forbes' (fka Acero) Motion to Dismiss this case, employment cases regarding respondeat superior liability for an employer where an employee acting within the scope of employment commits a tort are helpful to this analysis.[13]  To determine whether a tort was committed within the scope of an employee's employment under Hawai`i law, Hawai`i courts follow the Restatement of Agency § 228, which provides that:

_____

[13] This Court is cognizant of the fact that the scope of employment cases and Restatement of Agency approach this issue from the standpoint of liability of the employer, rather than through a lens of qualified immunity for the individual employee's acts.  However, this Court finds such cases to be instructive, because the Hawaii Revised Statute at issue clearly states that the scope of employment is the pertinent question, and does not follow the line of cases regarding qualified immunity under 42 U.S.C. § 1983, as previously argued by Plaintiffs.

27

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits; [and]
> (c) it is actuated, at least in part, by a purpose to serve the master[.] . . .
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Wong-Leong v. Hawaiian Indep. Refinery, Inc., 879 P.2d 538, 543 (Haw. 1994).

"In determining the scope of employment, the applicable test is whether the employee's conduct was related to the employment enterprise or if the enterprise derived any benefit from the activity."  Id. at 546.

The Restatement of Agency section 229 provides that "[t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."  Restatement of Agency 2d § 229 (1958).  The comments provide that

> a servant is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work . . . [a]lthough an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment.

Restatement § 229 Cmts. a and b.  Following the Restatement, the Hawaii Supreme Court has noted that an act, "although forbidden, or done in a forbidden manner, may be within the scope of employment . . . the ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business [.]"  State v. Hoshijo ex rel. White, 76 P.3d 550, 563 n.29 (Haw. 2003) (finding that the actions of a student manager of the state university basketball team in shouting racial slurs at a spectator at a basketball game was conduct within scope of employment because he was required to attend games, work on the bench, assist the team, it was foreseeable that he would interact with the public at games, and the handbook proscribed use of obscene or inappropriate language to spectators).

Clark testified that her responsibilities with CFS included providing assessment, working with DHS and the courts, and providing clinical services to the children.  Also working with the non-offending parents, and also possibly working with the offenders."  (Clark Depo. at 185.)  There is nothing in the record before the Court suggesting that Clark participated in any activities beyond those enumerated by her.  Furthermore, the Contract explicitly lists these same functions as those to be provided to DHS by CFS.  (See Ex. G, attached to CFS Defendants' MSJ.)

29

Plaintiffs provide no direct evidence that Clark operated outside the scope of her or CFS' authority.  As best as the Court can discern from Plaintiffs' motion and exhibits, the only allegation inferring such activity is Plaintiffs' claim that Clark "created arbitrary rules for how Denise Haldeman should act in her visitation on 11/8/2002 and enforced them through Donald Cupp."  (Pls.' CSOF # 8.)  As support, Plaintiffs cite to the reports of Dr. Hollida Wakefield (Ex. C) and Dr. Randy Rand, both of whom opine that Clark's rules and conditions for Mrs. Haldeman's visits were arbitrary.  Even assuming Plaintiffs' experts views of Clark's rules are correct, these opinions do not create a genuine issue of fact as to whether Clark operated outside of the scope of her employment.  CFS and, by extension, Clark were contracted by DHS to provide sex abuse treatment to children where abuse was suspected.  As such, Clark's primary responsibility was to ensure the welfare of the children whom she served.  The Court finds that setting rules for purposes of visitations between the children and the non-offending parent clearly falls within the scope of this duty.

For these reasons, the Court determines that Clark did not act outside the scope of her employment during her services to the Haldeman children.  As such, CFS Defendants are entitled to immunity for all of Plaintiffs' State law

claims based on HRS § 350-3(b).  The Court therefore GRANTS CFS Defendants'

MSJ with respect to this issue.[14]

IV.  Lack of Duty

       CFS Defendants contend that Plaintiffs cannot show that CFS

Defendants owed Adult Plaintiffs any duty and, as such, their State law claims are

without merit.  As the Court has already determined that summary judgment is

appropriate with respect to Plaintiffs' State law claims, the Court DENIES AS

MOOT CFS' Defendants' lack of duty argument.

V.  Punitive Damages

       CFS Defendants aver that there is no clear and convincing evidence

that would lead a reasonable person to find that CFS Defendants acted in wanton

disregard or with malice toward Plaintiffs and, as a result, Plaintiffs' punitive

damages claim should be dismissed.  The Court's determination that summary

judgment is warranted on all Plaintiffs' claims against CFS Defendants renders this

---

[14] CFS Defendants raise numerous other immunity arguments in support of their MSJ.  As the Court has already found other grounds on which to grant summary judgment on Plaintiffs' federal and State claims, the Court declines to discuss the following immunity arguments: (1) quasi-judicial immunity from State law claims; (2) qualified immunity from federal claims; (3) qualified immunity from State claims; and (4) absolute immunity based on court testimony.

argument moot.  The Court therefore DENIES AS MOOT CFS Defendants'

punitive damages argument.

VI.  Plaintiffs' Rule 56(f) Request for Continuance

At the hearing on April 14, 2008 and in their Supplemental

Opposition, Plaintiffs request a continuance on CFS Defendants' MSJ pursuant to

FRCP 56(f)[15] until Plaintiffs can complete the deposition of Clark.  Plaintiffs argue

that they are not fully able to present the facts essential to justify their opposition to

CFS Defendants' MSJ without such a continuance.

On November 27, 2006, Plaintiffs noticed the deposition of Clark,

anticipating that it would take place in Calgary, Canada on January 26, 2007.  At a

discovery conference held before Magistrate Judge Chang on January 17, 2007, the

parties discussed the Clark deposition.  On January 17, 2007, Magistrate Judge

Chang issued a Discovery Order (Doc. # 321), ordering that Clark's deposition

would be limited to a total of eight hours and that Plaintiffs could question her for

4 and ½ of these hours.  Plaintiffs did not seek reconsideration of or appeal the

---

[15] Rule 56(f) provides in pertinent part:
If a party opposing the motion shows by affidavit that, for specified reasons, it
cannot present facts essential to justify its opposition, the court may:
    (1) deny the motion;
    (2) order a continuance to enable affidavits to be obtained, depositions to be
    taken, or other discovery to be undertaken; or
    (3) issue any other just order.

Magistrate Judge's January 17, 2007 Discovery Order.  Clark's deposition went

forward on January 26, 2007.

On August 22, 2007, seven months after completing Clark's

deposition, Plaintiffs filed a Motion to Allow Additional Time to Complete

Deposition of Defendant Colleen Clark with the Discovery Master in which they

sought an additional four hours for Clark's deposition.  On September 13, 2007,

the Discovery Master issued an order (Doc. # 627) concluding that the reasons for

continuing Clark's deposition should have been raised at the January 17, 2007

discovery conference.  In addition, the Discovery Master noted that after receiving

the January 17, 2007 Discovery Order, Plaintiffs could have requested to move the

deposition date until the matter regarding an alleged incomplete production of

documents was resolved.  On September 17, 2007, Magistrate Judge Chang

approved and adopted the Discovery Master's September 13, 2007 order regarding

additional time to complete the deposition of Clark (Doc. # 630) (the "September

2007 Discovery Order").  On September 28, 2007, Plaintiffs appealed the

September 2007 Discovery Order.

On November 1, 2007, this Court denied Plaintiffs' appeal (Doc.

# 708), finding that Plaintiffs waived their arguments with respect to additional

time for Clark's deposition.  Specifically, the Court found that Plaintiffs could

33

have sought reconsideration from the Magistrate Judge or appealed the January 17, 2007 Discovery Order.  By not doing either, Plaintiffs effectively waived their arguments relating to the amount of time afforded for Clark's deposition.

Here, Plaintiffs essentially request a Rule 56(f) continuance on the same grounds upon which they premised their September 28, 2007 appeal.  In fact, Plaintiffs go so far as to cite to its previous briefings in support of the instant request.  Plaintiffs provide no new information to convince this Court that its previous ruling was erroneous.  Nor do Plaintiffs explain to this Court how arguments that the Court deemed waived in its November 1, 2007 Order are appropriately raised again here.  Regardless, as set forth in detail in the preceding sections, Plaintiffs claims against CFS Defendants cannot survive summary judgment.  In light of the fact that discovery has revealed no evidence of Clark's involvement in a conspiracy or other nefarious activities, it would be imprudent of this Court to allow Plaintiffs additional time to continue their investigation.

For these reasons, the Court DENIES Plaintiffs' request for a Rule 56(f) continuance.

## <u>CONCLUSION</u>

For the reasons stated above, this Court GRANTS IN PART AND

DENIES IN PART AS MOOT CFS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, April 29, 2008.



_____
David Alan Ezra
United States District Judge

<u>Vanessa Haldeman, et al. vs. Ruth Golden, et al.</u>, Civil No. 05-00810 DAE-KSC;
ORDER GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANTS CHILD AND FAMILY SERVICE AND COLLEEN CLARK'S
MOTION FOR SUMMARY JUDGMENT