IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VANESSA HALDEMAN & BENJAMIN HALDEMAN, BY THEIR PARENTS *AS NEXT FRIENDS*; JOSEPH & DENISE HALDEMAN; JOSEPH HALDEMAN, individually; DENISE HALDEMAN, individually; JERRY HALDEMAN, individually; & CAROL HALDEMAN, individually, ) ) ) ) ) ) ) ) ) ) ) ) | CV NO 05-00810 DAE-KSC |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| RUTH GOLDEN, in her individual capacity; PATRICIA NAVARRO, in her individual capacity; CAROLINE HAYASHI, in her individual capacity; CYNTHIA NOEL, in her individual capacity; UNIVERSITY OF NATIONS PRE-SCHOOL, a Private Agency; THE UNIVERSITY OF NATIONS as Respondeat Superior; ALEXANDER GRAVES, in his individual capacity; COUNTY OF HAWAII, a municipal entity; KAREN DUTY, in her individual capacity; DONALD CUPP, in his individual capacity; JILL ACERO, in her individual capacity; BOBBETTE STRAUSS, in her individual capacity; CHILD PROTECTIVE SERVICES, an agency of the Department of Human Services; ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | |
|---|---|
| DEPARTMENT OF HUMAN SERVICES [DHS], State of Hawaii; LILLIAN KOLLER, DIRECTOR OF DHS, in her official capacity; ANDREA MCCOLLUM, in her individual and professional capacity; LEGAL AID SOCIETY OF HAWAII, a Private Non-Profit Agency; DAVID KAULIA, in his individual capacity; COLLEEN CLARK, in her individual and professional capacity; CHILD AND FAMILY SERVICE, a Private Non-Profit Agency; JOINTLY AND SEVERALLY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

ORDER GRANTING DEFENDANT/CROSS-CLAIM
DEFENDANT COUNTY OF HAWAIʻI'S MOTION
FOR SUMMARY JUDGMENT

On April 7, 2008, the Court heard Defendant/Cross-Claim Defendant County of Hawai`i's Motion for Summary Judgment. (Doc. # 761.) William Deeley, Esq., and John Winnicki, Esq., appeared at the hearing on behalf of Plaintiffs; Joseph K. Kamelamela, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant Alexander Graves and the County of Hawaii; Julie A. Passa, Deputy Attorney General, appeared at the hearing on behalf of Defendant Donald Cupp; John R. Molay, Deputy Attorney General, appeared at the hearing on behalf of Defendant Karen Duty; E. Mason Martin, III, Esq., appeared at the

hearing on behalf of Defendants Ruth Golden, Patricia Navarro, Caroline Hayashi, Cynthia Noel, University of Nations Pre-School, and The University of the Nations; and John P. Gillmor, Michael S. Vincent, and Ryan S. Endo, Deputy Attorneys General, appeared at the hearing on behalf of Defendant Jill Acero; April Luria, Esq., appeared at the hearing on behalf of Defendants Child and Family Service and Colleen Clark; and William J. Nagle, Esq., appeared at the hearing on behalf of Defendants Bobbette Strauss and the Institute for Family Enrichment. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendant/Cross-Claim Defendant County of Hawai`i's Motion for Summary Judgment.

## BACKGROUND

Defendant Alexander Graves was employed as a police officer by the County of Hawaii Police Department (the "County of Hawaii" or "County") from December 1990 until he retired on December 31, 2002. In 1997, Graves became a member of the Juvenile Aid Section, which was a newly-formed unit that investigated child abuse cases. In 1999 through 2000, Graves received advanced training, which included training in investigating child abuse cases, forensic

interview training,[1] domestic violence sexual assaults, and evidence collection. Graves testified that in this forensic training he covered a lot of material in a small amount of time. In May 2000, Graves was certified as a forensic interviewer by the Children's Justice Center.

        The details of Graves's involvement in this case are more fully set forth in the Order Granting in Part and Denying in Part Graves's Motion for Summary Judgment (Doc. # 901.). Graves was involved in the seizure of the Haledman Children. He witnessed the interview of then four-year-old Vanessa Haldeman, and he conducted the interview of Benjamin Haldeman. Graves then ordered a medical exam of Vanessa. Plaintiffs allege that Graves was inadequately trained in the field of conducting child abuse investigations.

        Graves also conducted an investigation of Joseph Haldeman, based upon Vanessa's allegations of sexual abuse by her father. As part of this investigation, Graves received photographs and the Costco film processing envelope, which had been maintained at the Honolulu Police Department since they had been sent by the Costco employee. The photos allegedly contained

---

[1] A forensic interview is an interview of a child that is videotaped to be used for court proposes and occurs in a controlled, structured environment, and is done by a certified interviewer. A field interview takes place at the scene and its purpose is to acertain basic facts.

images of Vanessa Haldeman with her vagina exposed.  The photos were later used in a criminal prosecution of Joseph, which included charges of child abuse and child pornography.  Plaintiffs have alleged that these photos were adulterated by Graves or by someone else due to Graves's alleged negligence regarding a chain of custody, and other police officers' failure to follow chain of custody procedures.

On December 28, 2005, Plaintiffs filed a Complaint against various defendants, including the County, which was amended on August 31, 2006 ("Amended Complaint").  The Amended Complaint alleges that the County is liable for constitutional violations pursuant to 42 U.S.C. § 1983.

On January 30, 2008, the County filed the instant motion for summary judgment.  (Doc. #761.)  Plaintiffs filed an opposition on March 20, 2008, and the County filed a reply on March 27, 2008.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

The County argues that it cannot be held liable under Plaintiffs' Section 1983 claims based upon Graves's alleged conduct because there is no unconstitutional policy statement, regulation, or decision formally adopted by the County, and there is no unconstitutional custom or usage at issue in this lawsuit.[2] Plaintiffs assert that their cause of action is based on a failure to train, ratification of Graves's conduct, and their allegation that the County had a custom and policy of mishandling evidence.

A municipality cannot be held liable pursuant to section 1983 under a theory of respondeat superior liability. Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Instead, a municipality can only be held liable for unconstitutional acts where the acts were "(1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a

---

[2] The County of Hawaii did not address any state law claims that Plaintiffs may be attempting to bring against them. To the extent such claims may be pending against the County, the County could only be found liable for those claims remaining against its employee, Alexander Graves.

custom which is so permanent and well settled to constitute a custom or usage with the force of law." Sunn v. City & County of Honolulu, 852 F. Supp. 903, 908-09 (D. Haw. 1994).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997).

I.      Failure to Train

Where a claim is based upon a failure to properly train police officers, liability may be imposed "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Price v. Sery, 513 F.3d 962, 973 (9th Cir. 2008) (citations omitted). To prove deliberate indifference, a plaintiff must demonstrate that the county made a conscious or deliberate choice "to risk a 'likely' violation of constitutional rights." Id. "[This] standard is objective in that it does permit a fact finder to infer 'constructive' notice of the risk where it was 'obvious'-but this is another way of saying that there needs to be some evidence that tends to show a conscious

choice." Id. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Com'rs of Bryan County, 520 U.S. at 410.

> The Supreme Court has explained that
>
> a deficient training "program," [is] necessarily intended to apply over time to multiple employees. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the "deliberate indifference"-necessary to trigger municipal liability.

Id. at 407 (citation omitted).

Plaintiffs argue that the alleged failure to provide adequate training to Graves amounted to deliberate indifference because the County of Hawaii was aware of serious problems that occur in child abuse investigations that could lead to constitutional deprivations. Plaintiffs also argue that despite this alleged awareness, the County of Hawaii made a deliberate choice not to implement appropriate procedures to ensure that its officers were getting adequately trained in this area. Plaintiffs assert that although Graves received training, it was inadequate, as he remained ignorant of the basic foundation knowledge required to

effectively and competently investigate child abuse cases.  Plaintiffs further contend that Graves's allegedly negligent investigation and alleged constitutional violations are a direct result of the County's deliberate indifference to the required training necessary to ensure the protection of civil rights.

Plaintiffs cite to Exhibits A through F in support of their contention that the County of Hawaii was aware that its child-abuse investigation training was inadequate and would likely lead to violations of constitutional rights.  None of these exhibits, however, create a genuine issue of fact as to whether the County of Hawaii was aware that its child-abuse investigation training was inadequate and likely to lead to violations of constitutional rights.

First, the newspaper articles attached by Plaintiffs as Exhibit A discuss the 1986 acquittal of James McKellar on charges of sexual assault of two preschool girls, who were allegedly abducted from their preschool on the windward side of the island of Oahu in Hawaii.  The articles report that after a non-jury trial, then State Circuit Court Judge Robert Klein found in a written decision that he doubted whether the incident ever occurred, including the abduction.  The newspaper also reported that the judge found that the accusations made by the three and four-year-old girls were likely the result of interviews and questions that were fraught with poor interview techniques, and that the girls had "learned" the

11

allegations through highly pressurized and coercive questioning by adults, including civil authorities, who had assumed the abuse had occurred. The articles also reported that after the acquittal, McKellar and his wife sued various persons for malicious prosecution and that case resulted in a cash settlement to the McKellars.

Even assuming that Plaintiffs could establish that Graves was inadequately trained, the newspaper articles do not create a genuine issue of fact of whether the County of Hawaii was aware that their police officer training was inadequate such that it was likely to result in constitutional violations. First, Plaintiffs presented no evidence that anyone at the County of Hawaii who was in charge of training was aware of these newspaper articles or the judge's findings in the McKellar case. The McKellar case was held on Oahu and there is no evidence that the County of Hawaii police department, which is located on the island of Hawaii, was a party to the case or was otherwise aware or should have been aware of the McKellar case. Second, Plaintiffs presented no evidence that the training received by Graves on how to conduct a child-abuse interview and investigation was the same as or worse than the interview techniques used by the civil authorities in the McKellar case. Indeed, the newspaper articles were written in 1986, fourteen years prior to the training that Graves received. Thus, this evidence, even

making all inferences therefrom in Plaintiffs' favor, cannot establish that the County of Hawaii was aware that its investigator training was inadequate and likely to result in violations of constitutional rights, yet the County made a deliberate choice to continue with such inadequate training, and that this was the same inadequate training that Graves received.

Plaintiffs also attach as Exhibit B a report by the Office of the Auditor for the State of Hawaii regarding the Child Protective Services system. This report, however, discusses the failure by the Child Protective Services system, which includes the County of Hawaii police department, to ensure that reports of child abuse are investigated and that Family Court and criminal proceedings are brought. The report noted that nearly half of the child abuse cases were not even registered in the Child Protective Services system. The report does not discuss investigation and interview techniques, nor does it discuss training of personnel or police officers. Therefore, this exhibit does not show that the County of Hawaii should have known that its officer training was inadequate.

Exhibit C consists of notices of information briefing for various Senate and House of Representatives' meetings regarding Child Protective Services, from the regular session in 2003. As these notices are from 2003, well after Vanessa and Benjamin were interviewed and the Adult Plaintiffs were seized,

and as the notices provide no detail or information, they are of no probative value on this issue.  Exhibit C also contains a House of Representatives Concurrent resolution requesting the audit of the Child Protective Services system, which states only that the audit should include a review of training for agency staff, among many other issues, but does not include the results of such audit on the training issue, or otherwise state that the training that had been previously provided was inadequate.

Exhibit D consists of various newspaper articles from 2003, which discuss another upcoming audit of the Child Protective System and contain allegations that CPS workers have threatened to take away children based upon unsubstantiated allegations of abuse or neglect and ruined families.  The articles also discuss the high caseloads and lack of services to allegedly abused children.  However, this Court could find no discussion in those newspaper articles that could show that the County of Hawaii should have been aware that its child-abuse investigation training for its officers was inadequate.

Exhibit E is a House of Representatives Concurrent resolution requesting the audit of the Child Protective Services system, which is very similar to Exhibit C, and again states only that the audit should include a review of training for agency staff, among many other issues, but does not include the results

of such audit on the training issue, or otherwise state that the training that had been previously provided was inadequate.

Finally, Exhibit F is the Audit Report from 2003. Although it notes several deficiencies within the Child Protective Services system, it does not identify interview and investigation techniques among the deficiencies.

Therefore, Plaintiffs' failure-to-train claim fails as a matter of law because even if Graves's training was inadequate, Plaintiffs have not produced any evidence from which it can be inferred that the County of Hawaii was aware that its training was inadequate and yet made a conscious choice not to improve it.

II.     Custom or Policy or Ratification

A municipality may also be found liable where the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; an official with "final policy-making authority" committed the constitutional tort; or where "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992); see Monell, 436 U.S. at 690-91. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where

the practices of officials are permanent and well settled.  See <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970).

Plaintiffs allege that the County did not have a proper evidence-preservation policy, which thereby allowed Graves to burn all of his notes and notebooks on the case after retiring.  Plaintiffs assert that police officers routinely failed to follow the County's own chain of evidence procedures, which led to the negatives of photographs being destroyed.  Finally, Plaintiffs allege that photographs used in the criminal proceedings were fabricated and that the County failed to prevent this from happening.

The County argues that these claims fail as a matter of law because they are based upon a single instance of an alleged constitutional deprivation and they have not established a custom or policy.  This Court agrees.

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, . . . where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

<u>City of Oklahoma City</u>, 471 U.S. at 823-24 (1985); see <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1233-34 (9th Cir. 1989) ("A single incident of unconstitutional action by a non-policymaking employee is insufficient to prove a

municipal policy or custom."). This is because a claim against a municipality based upon on a single decision creates a high danger of finding liability without fault. Board of County Com'rs of Bryan County, 520 U.S. at 408.

> Because the decision necessarily governs a single case, there can be no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate. Nor will it be readily apparent that the municipality's action caused the injury in question, because the plaintiff can point to no other incident tending to make it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause.

Id.

Here, even if what Plaintiffs alleged were true, they have only presented evidence of one alleged violation of constitutional rights. For example, Plaintiffs only presented evidence that Graves burned his investigation notebooks. There was no evidence that any other officer engaged in such conduct. Similarly, Plaintiffs only presented evidence of a failure to follow certain chain of custody procedures with respect to the Costco photographs in this case. Plaintiffs presented no evidence of any other case or instance where the chain of custody was not followed. Accordingly, there is no evidence that creates a genuine issue of whether the County of Hawaii had a policy or custom with respect to allowing evidence to be tampered with, not enforcing its chain of custody, or that it should

have known that employees may destroy their investigative notes upon leaving employment.

Plaintiffs next argue that their claim is valid because Graves's superiors ratified his conduct and ratification is a question for the jury. "[F]inal decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983." Bd of County Com'rs of Bryan County, 520 U.S. at 406.

Plaintiffs cite to Exhibit X at page 22 as support for their allegation of ratification. Exhibit X, however, is a one-page letter from Plaintiffs' attorney regarding depositions they intend to conduct in this case. Other than claiming in one sentence in their opposition brief that the County ratified Graves's conduct, Plaintiffs did not further elaborate on this allegation or cite to any other evidence of ratification.

For these reasons, Plaintiffs have failed to provide evidence which can create a genuine issue of fact such that they could maintain their claim against the County of Hawaii.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant/Cross-Claim Defendant County of Hawai`i's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 29, 2008.



_____
David Alan Ezra
United States District Judge

Vanessa Haldeman, et al. vs. Ruth Golden, et al., Civil No. 05-00810 DAE-KSC; ORDER GRANTING DEFENDANT/CROSS-CLAIM DEFENDANT COUNTY OF HAWAI`I'S MOTION FOR SUMMARY JUDGMENT